BROOKS *vs.* THE NEW-YORK AND ERIE RAILROAD COMPANY.

Where the cattle of a stranger are on the lands of another, adjoining a railroad, and from those lands they pass on to the railroad through a gate left open by the proprietor of such lands, and are killed by the engine, their owner cannot recover their value, although the railroad company has not complied with the 44th section of the general rail-road act, in respect to fences, at other points on the railroad.

The true reading of that section of the statute does not require a railroad company to construct and maintain cattle-guards at *farm-crossings* of the road, but only at *road-crossings.*

THIS was an appeal by the plaintiff from a judgment of the Tioga county court.   The cause was commenced before a justice of the peace, to recover from the defendants the value of two cows and a heifer, which were alledged to have been killed by the careless, negligent and improper conduct of the defendants, by their agents and servants.   It was admitted by the counsel for the defendants that they were an existing railroad corporation, and were such in the month of September, 1850 ; that during that month the company had locomotive engines and cars running upon their road, under the care and management of their agents and servants ; that the engine and cars of the passenger train ran over and upon two cows and a heifer belonging to the plaintiff, and killed them, whilst they were upon the track of said road, between one and two miles east of the village of Owego, opposite the farm of G. W. Hollenback.   The strip of railroad along which they were killed was about a mile long, running eastwardly and westwardly, with a cattle-guard at the westerly end, near a brick yard occupied by E. Brigham, and

another at the easterly end of the strip. The brick yard was on the north side of the railroad, and about seven or eight rods from the highway, which was on the south side of the railroad. The entrance from the highway to the brick yard was by a gate, from which the road passed over the railroad to the brick yard. It appeared from the evidence that the cattle entered upon the track of the railroad through the gate leading to the brick yard. The brick yard had been occupied as such for 25 or 30 years prior to the accident. The gate was generally left open, and the land along on both sides of the strip above mentioned was consequently " the general range of cows belonging to the village." On this strip, some part of the way there was no fence; there was an old remnant of a fence a part of the way, but no fence that would turn cattle. The plaintiff claimed to recover on the ground of the absence of fences, and of cattle-guards at the brick yard. The justice rendered a judgment against the plaintiff for costs ; and on appeal to the county court that judgment was reversed ; whereupon the defendants appealed to this court.

*J. Morris*, for the appellants.

*G. S. Camp*, for the respondent.

*By the Court*, SHANKLAND, J. I think it should be assumed that the justice found that the cattle entered upon the track of the railroad, through the open gate, which led to the brick-kiln across the track of the railway, on the farm of Hollenbeck. The evidence is quite satisfactory, that the cattle entered at that point. It is also to be assumed, as a fact found, that the plaintiff's cattle had no right to go upon Hollenbeck's premises, or upon the brick-kiln premises, which was in the occupancy of a tenant.

Under this state of facts, several questions may arise, on the true construction of the 44th section of the act of 1850, (*Sess. Laws of* 1850, *p.* 233.)

First. If the company build the *required fence,* on the side

of the railroad, part way across the lands of an adjoining propri-etor, with a proper gate and farm crossing to this same proprie-tor's land on the other side, but leave another portion of the fence unbuilt, and it happens that the said proprietor leaves his gate open, by means whereof his cattle go through the said open gateway upon the road, and are there killed by an engine, with-out negligence or willfulness on the part of the company, can the proprietor yet recover the damage ? Second. If the propri-etor can, can a stranger also recover, whose cattle stray upon the said proprietor's land, and pass through the same gate, and are killed, under the same circumstances. Third. Is the company required to build cattle-guards at all *farm-crossings* of the road, as well as at road crossings, suitable and sufficient to prevent cattle and animals from getting on the railroad ?

I. I am of the opinion, that in the case first supposed, the adjoining proprietor could not recover. The act must have a reasonable construction ; and as it was intended to change the common law, only so far as to make the railroad company build the whole, instead of half of the fence, between their enclosures, and to make the company liable for the damage incurred by the proprietor, in consequence of such neglect, it ought not to be construed so as to make the company liable, where the damage was not the result of their omission, and when the damage did occur in consequence of the gate being left open, by the propri-etor himself. The object of the statute is not to impose a pen-alty ; such seems to have been the opinion entertained in respect to this section, by the court, in the case of *Waldron* v. *The Saratoga and Washington Railroad Co.* (8 *Barb.* 390, 394.)

I am also of the opinion that the cattle of a stranger, which are on the premises of the adjoining proprietor, without right, are not within the protection of this clause of the statute. This is evident not only from the wording of the statute, but also from the propriety of the thing. The words are, " Every cor-poration, &c. shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, with openings, or gates, or bars therein, and farm crossings of the road *for the use of the proprietors of lands*

*adjoining such railroad ;* and also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad." Now, the legislature were making provision, in the first clause of the above section, for the benefit of the adjoining proprietors only, and not for *strangers,* who had not the legal right to use those adjoining lands, and farm crossings. It has frequently been held, under the old statute in relation to division fences, that one who was bound to maintain a division fence, was only thus bound as to cattle which were rightfully on the adjoining close, and not as to cattle wrongfully there. (6 *Mass. R.* 90. 19 *John.* 385. 3 *Wend.* 145. 7 *Barb.* 306.) I think the statute in question should receive the same construction.

I am also of opinion that the true reading of the section does not require the company to construct and maintain cattle guards, at *farm crossings* of the road, but only at *road crossings.* The first clause of the section before the *period,* relates to farm crossings only ; and the last clause relates to public highway crossings only.

The cattle guard was thought not necessary at farm crossings, where fences and gates, or bars, would be sufficient to keep cattle within the adjoining fields, except when driven across by the owners ; but at road crossings, where cattle running at large, in pursuance of town regulations, or other lawful cause, were liable to pass in, and upon, the track of the railroad, required the additional protection afforded by the cattle guards mentioned in the statute.

It is not necessary in this case to decide whether the owner of an animal wrongfully in the public highway, which should pass from said highway, on to the railroad, and be there injured for want of the cattle guard, would be legally entitled to recover. Perhaps all beasts are to be deemed lawfully in the highway, for the p᾽oses of the remedy. On this question I give no opinion. ᾽awcett v. *North Midland Railway Company,* 2 *Eng. La   and  Equity R.* 289.) See also 29 *Maine Rep.* 307, where it was held the plaintiff could not recover in such a case.

Brooks *v.* New-York and Erie Railroad Co.

The question propounded to the witness Spendly, in relation to the sufficiency of the cattle guard near the brick yard, was wholly immaterial; because it was not proposed, or pretended, that the cattle came on to the road at that point; and if not, its condition in no respect caused the injury complained of.

I also infer that the cattle guard alluded to, at that point, was not at a road crossing, within the meaning of the act; it being a private crossing to the brick yard, from the public highway, on the south side of the railroad. If so, the defendants were not obliged to erect cattle guards at that crossing.

But, the only real point necessary to be decided in this case is, that where the cattle of a stranger are on the lands of a proprietor adjoining a railroad, and from those lands pass on to the railroad through a gate left open by the proprietor of the said lands and are killed, their owner cannot recover, although the defendants have not complied with the 44th section of the general railroad act, in respect of fences at other points, on the said road.

That part of section 44, which declares that "until such fences and cattle guards shall be duly made, the corporation, and its agents, shall be liable for all damages, which shall be done, by their agents, or engines, to cattle or horses, or other animals, thereon;" cannot be taken to mean, what it says, literally; for if it were, the owner of cattle, placed by him purposely on the road, could recover. This shows the necessity of submitting this act, like all others, to judicial construction.(*a*)

I am of opinion, the justice's judgment was right; and that of the county court should be reversed.

Judgment reversed.

[DELAWARE GENERAL TERM, July 13, 1852. *Shankland, Mason, Gray* and *Crippen,* Justices.]

(*a*) In *Perkins* v. *The Eastern Railroad Co.* (29 *Maine R.* 307,) it was held that if a railroad company is bound to fence the entire track of road, yet if a cow comes upon the road from a highway, or common, for want of fence, and is killed, the owner cannot recover, unless he proves *affirmatively* that the cow had a lawful right to be on the common, by a town vote. But in *Fawcett* v. *The North Midland Railway Co.* (2 *Eng. Law and Equity Rep.* 289,) where

the act required the defendants to keep gates constantly closed at road crossings, and the plaintiff's horse leaped out of his inclosure into the highway, and passed on to the railroad, because the gate was open, it was held he could recover the value of the horse which was killed; and that the horse, as to the defendants, was lawfully in the highway.